HELLER FINANCIAL, INC., Plaintiff-Appellee, v. JOHNS-BYRNE COM-
PANY, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1551

Opinion filed September 29, 1992.—Rehearing denied November 9, 1992.

Paul F. Schofield, of Chicago, for appellant.

Dardick & Denlow, of Chicago (Nathan H. Dardick and Michael D. Rich-
man, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

In September 1985, Microdot Lithoplate Company (Microdot) entered
into an equipment lease agreement with P.C. Leasing Corporation (P.C.
Leasing), as to which Johns-Byrne Company (defendant) gave a written
guaranty. Several months later, P.C. Leasing assigned its interest in the
lease to Heller Financial, Inc. (plaintiff). When, in July of 1989, Microdot
defaulted under the terms of the lease, plaintiff notified both Microdot
and defendant thereof and, as permitted by the terms of the lease, accel-
erated the remaining payments due and made a demand in the amount of
$132,594. In January 1990, Microdot, plaintiff and defendant agreed to
sell the equipment to a third party for the agreed price of $89,000. On the

day of the contemplated sale, however, plaintiff presented to defendant a voluntary repossession agreement containing a waiver of certain of defendant's rights, and a blank promissory note. Although defendant agreed to the repossession of the equipment, it did not agree to sign the repossession agreement or the blank promissory note because it did not want to "make itself liable for any obligations in excess of the amount owed under the lease and guaranty"; plaintiff therefore refused to complete the sale.[1]

On February 9, 1990, plaintiff filed suit to collect the sum of $132,594 which it claimed to be due under the lease, plus interest, late charges, attorney fees and costs. In its answer defendant admitted that (1) Microdot had entered into the lease, (2) it had entered into the guaranty, (3) Microdot had defaulted on its lease, and that (4) plaintiff had demanded certain payments from it. Defendant denied, however, that it owed $132,594 to plaintiff. Defendant also asserted certain affirmative defenses: (1) plaintiff had materially altered the guaranty agreement when it refused to permit the sale to a third party for $89,000, and when it subsequently refused to credit defendant with that amount; (2) defendant had been discharged under the guaranty agreement because plaintiff failed to mitigate damages; (3) the obligations under the original lease agreement were unenforceable because the lease agreement contained a "confession of judgment" clause which is void and illegal; (4) the original obligation was void and unenforceable because plaintiff had waived its rights to prompt payments from the obligor; and (5) defendant had been discharged from further performance because of plaintiff's material breach of the guaranty agreement by demanding that defendant execute a blank promissory note and a waiver of certain of its rights as a condition of plaintiff's obligation to mitigate damages.

Plaintiff moved the court to strike all five of these affirmative defenses and to grant summary judgment in its favor on the ground that, pursuant to the language of the guaranty, defendant was unconditionally obligated to pay the amount due under the lease; thus, there were no genuine issues of material fact to be tried. In its answer to plaintiff's motion for summary judgment and affidavit in support of damages, defendant admitted that certain monies were due under the lease. In an affidavit from Timothy Uchwat, controller for defendant, it admitted that

> "[i]f all payments are allocated solely to rent due under the lease, the gross balance of rent due does not exceed $120,034.43 as of

---

[1]The equipment was eventually sold to the same third party in the fall of 1990 for $82,000.

September 25, 1989. \*\*\* The equipment was carried as a capital asset at the initial net cost of $264,890.00 under generally accepted accounting principles on the books and records of Microdot Lithoplate Company. Full amortization at 13% per annum resulted in monthly principal and interest payments of $6,027.00, which are identical to the lease payments. As such, payments were allocated between principal and interest and, as of September 25, 1989, the outstanding principal balance as shown on the books of Microdot Lithoplate Company is $117,418.98."

Also, at the hearing on the summary judgment motion, defense counsel admitted that prior to the proposed sale, defendant owed certain monies under the guaranty to plaintiff. The court subsequently struck defendant's third and fourth affirmative defenses, and on October 17, 1990, granted partial summary judgment in favor of plaintiff on the sole issue of liability, the judge having reasoned that "there [was] no question \*\*\* there is liability for something. Now how much remains to be determined."

After having been given leave to do so, defendant filed three affirmative defenses which were essentially a restatement of those that the court had allowed to stand, and two new "affirmative defenses and counterclaims." The "sixth affirmative defense and counterclaim" alleged that under the lease agreement, the damages claimed by plaintiff were not a reasonable estimate of the actual damages incurred. The "seventh affirmative defense and counterclaim" alleged that the lease was a "security agreement" under section 1—201(37) of the Illinois Uniform Commercial Code (Code) (Ill. Rev. Stat. 1989, ch. 26, par. 1—101 *et seq.*), and that, as such, section 9—504 of the Code required that a sale of collateral be commercially reasonable, which was not the case here. Because of these affirmative defenses and counterclaims, defendant claimed that it was entitled to "in excess of $97,000.00" in damages.

After conducting numerous proceedings and ordering briefs on the issue of damages, the trial court, on January 8, 1991,

"ordered \*\*\* summary judgment \*\*\* entered in favor of plaintiff and against defendant in the amount of $31,797.05, the calculation of which was explained orally by the court and will be reflected in the transcript. It is further ordered that *the remaining issues raised by defendant's objections to plaintiff's claim, including the proper present value discount, the proper credit for proceeds from sale of the equipment and attorneys' fees and costs, be determined by a trial court at a future date.*" (Emphasis added.)

The transcript of the hearing held on the summary judgment motion reflects the trial court's intention to "enter a judgment for the amount, which I believe, are [*sic*] unequivocally due and leave for the trier of fact

the question whether there may be additional sums due." On February 7, 1991, plaintiff moved to certify this January 8, 1991, order as a final one pursuant to Rule 304(a). (134 Ill. 2d R. 304(a).) On February 19, 1991, the court, after plaintiff had moved to strike them, allowed defendant's first, second and fifth affirmative defenses to stand, finding them to have "superseded defendant's original first, second and fifth affirmative defenses"; it also allowed defendant's sixth affirmative defense and counterclaim to stand, but struck the seventh affirmative defense.

On April 30, 1991, the trial court, relying on *Bloom v. Landy* (1979), 72 Ill. App. 3d 383, granted plaintiff's motion for a Rule 304(a) finding that "there shall be no just reason for delaying enforcement or appeal of this judgment pursuant to Illinois Supreme Court Rule 304(a)." It also reduced the "minimum amount" owed to plaintiff to "$29,754.28 plus interest at the statutory judgment rate as computed from January 8, 1991." The court arrived at this figure by reducing to present value the amount due under the lease, $132,594, using defendant's suggested rate of 13%. The resulting figure was $117,418.98. The court then set off from this amount the agreed sale price of the equipment, $89,000, thus arriving at $28,418.98 due under the lease. To this amount the court added prejudgment interest for 343 days at the statutory rate of 5%, to arrive at the "minimum amount" owed of $29,754.28. On May 8, 1991, defendant filed its notice of appeal, and on May 16, 1991, plaintiff filed its answer to defendant's remaining affirmative defenses.

I

It is defendant's contention that the trial court erred in certifying under Supreme Court Rule 304(a)[2] its January 8, 1991, order because the

---

[2]Rule 304(a) provides as follows:
"(a) Judgments As To Fewer Than All Parties or Claims—Necessity for Special Finding. If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing the notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required filing shall be treated as the date of the entry of final judgment. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." 134 Ill. 2d R. 304(a).

rule applies only to cases involving multiple claims or parties and this case involves neither; that there exists only one plaintiff and one defendant, and plaintiff's entire claim rests on the enforcement of a single guaranty. Plaintiff insists, however, that the trial court had the authority to enter a Rule 304(a) order on a one-count complaint even though the judgment reflected the amount due as "minimum," and despite the possibility that additional sums might also be due.

■ Our supreme court, in *Ariola v. Nigro* (1958), 13 Ill. 2d 200, held that a "claim" is not limited only to "causes of action," but includes a more "flexible and reasonable meaning." (*Ariola*, 13 Ill. 2d at 206.) In a later case the court declared "that the rule applie[s] even 'when the judgment or decree determines fewer than all the rights [or] liabilities in issue or fewer than all the matters involved in the case.' " (*Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, 465, quoting *Getzelman v. Koehler* (1958), 14 Ill. 2d 396, 400.) *Marsh* went on to define a claim, for the purposes of Rule 304(a), as "any right, liability or matter raised in an action." *Marsh*, 138 Ill. 2d at 465.

Plaintiff relies on *Bloom v. Landy* (1979), 72 Ill. App. 3d 383, and *Cahn v. Northwestern Mutual Life Insurance Co.* (1915), 192 Ill. App. 172, in support of its contention that the trial court's partial summary judgment on the issue of "minimum damages owed" requires this court to hear and decide this appeal pursuant to Rule 304(a). In *Bloom*, the issue before the court was "whether summary judgment on part of a single money claim—*i.e.*, on $20,677.50 of Bloom's $30,000 contract claim—is a final order" for purposes of appeal. In deciding in the affirmative, the court concluded that section 57 of our former Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57, now superseded by section 2—1005 of our Code of Civil Procedure, but containing the same provisions), provided that a plaintiff could move for summary judgment on "any part of the relief sought," and that, thus, the grant of partial summary judgment was a final order for purposes of appeal. (*Bloom*, 72 Ill. App. 3d at 398.) In making its determination, the court stated:

> "Our conclusion is supported by the fact that section 57 has 'some historical background in section 55 of the Practice Act of 1907.' (Ill. Ann. Stat., ch. 110, par. 57, Committee Comments, at 60 (Smith-Hurd 1968).) Section 55 provided in relevant part:
>
> > 'If the plaintiff in any suit upon a contract, express or implied, for the payment of money, shall file with his declaration an affidavit showing the nature of his demand, and the amount due from the defendant, after allowing to the defendant all his just credits, deductions, and set-offs, if any, he shall be entitled to judgment, as in case of default, unless the defendant, or his

agent or attorney, shall file with his plea an affidavit, stating that he verily believes the defendant has a good defense to said suit upon the merits to the whole or a portion of the plaintiff's demand, and specifying the nature of such defense, and if a portion specifying the amount, (according to the best of his judgment and belief) \*\*\* *If the affidavit of defense is to only a portion of the plaintiff's demand, the plaintiff shall be entitled to a judgment for the balance* of his demand and the suit shall thereafter proceed as to the portion of the plaintiff's demand in dispute as if the suit had been brought therefor \*\*\*.' (Emphasis added.) (Ill. Rev. Stat. 1907, ch. 110, par. 55.)

Pursuant to section 55, the Illinois courts consistently held that partial summary judgment for a portion of the damages claimed by a plaintiff in a contract action was a final judgment for purposes of appeal. *Cahn v. Northwestern Mutual Life Insurance Co.* (1915), 192 Ill. App. 172.

Since we conclude that the partial summary judgment entered below is a final order, and since the trial court made the requisite finding of 'no just reason for delaying enforcement or appeal,' [appellant's] appeal of this order properly lies under Supreme Court Rule 304(a)." *Bloom,* 72 Ill. App. 3d at 398-99.

■ We agree with the reasoning employed by the *Bloom* court; accordingly, we hold that the court's January 8, 1991, order is a final one since it clearly disposes of the rights of the parties in regard to some definite part of the controversy. Defendant admitted owing at least $117,418.98 to plaintiff for payments due under the lease, and at a minimum, taking into account a setoff for the $89,000 agreed to by the parties as the sales price of the equipment, as well as statutory interest, plaintiff is entitled to the amount awarded by the court. Consequently, there being no dispute between the parties as to that sum being the minimum amount due plaintiff, there was no genuine issue of material fact to be tried. (*Colt Construction & Development Co. v. North* (1988), 168 Ill. App. 3d 913.) It would be manifestly unfair under such circumstances to delay plaintiff in the collection of a claim so indefeasibly due to it. The trial court, having entered an absolute and unconditional order for the payment of that amount, retains jurisdiction to determine what additional amounts are due, if any; but, it would defeat the salutary purposes of summary judgment to relegate plaintiff to await a trial of the remaining portions of its case before it could enforce the orders at issue in this appeal, especially in light of the inordinate length of time it takes to reach a case for trial in our county.

Nor was the circuit court's holding affected by defendant's affirmative defenses charging a material alteration of the guaranty. In this connection, we note that defendant argues only its first, second, fifth and sixth affirmative defenses on appeal. According to *McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629, a case for which defendant vouches, "any action taken by a creditor without the guarantor's consent which varies the terms of the principal obligation, increases the guarantor's risk, or deprives the guarantor of the opportunity to protect himself, will result in a discharge *pro tanto* of the guarantor from his obligation." (*McHenry*, 117 Ill. App. 3d at 633.) Assuming, *arguendo*, as did the trial court, that plaintiff's actions varied the terms of the principal obligation, defendant would be discharged from liability only "to the extent of the loss occasioned by such conduct on the part of the payee" (*Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 420), and the trial court adhered faithfully to this formula in assessing defendant's damages.

Although plaintiff sold the equipment in October of 1990 for $82,000, the amount of the judgment was determined by giving defendant credit for $89,000, the amount defendant contended should have been the proceeds of the sale. Indeed, the trial court based the amount of the judgment on defendant's own calculations. This was a simple collection matter. Defendant admitted Microdot's entering into the lease with P.C. Leasing. It admitted also the guaranty, Microdot's failure to make the payments required by the lease, and plaintiff's demands for payment by defendant. Uchwat admitted also Microdot's owing the sum used by the trial judge in rendering his judgment; and he admitted also that plaintiff fulfilled its obligations under the lease, that both Microdot and defendant failed to make their payments because of cash flow problems, and that there was no other reason why defendant did not pay plaintiff.

Therefore, the essential elements of a simple contract case were established: the existence of a valid and enforceable contract, a breach thereof, plaintiff's performance and damages. Accordingly, we find that there exists no genuine issue of material fact regarding liability, the central holding of the circuit court's order of October 17, 1990.

Furthermore, merely because plaintiff did not file a timely answer to defendant's amended counterclaims and affirmative defenses, it does not follow that it conceded that those affirmative defenses were meritorious. While it is true that

"the failure to reply to new matter raised by way of affirmative defense in an answer or countercomplaint results in an admission of the allegations contained therein (Ill. Rev. Stat. 1979, ch. 110, par. 40(2); *First Federal Savings & Loan Association v. American*

*National Bank & Trust Co.* (1968), 100 Ill. App. 2d 460, 241 N.E.2d 615), *** such failure does not necessarily amount to an admission that the new matter constitutes a valid legal defense." (*Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 118, *rev'd on other grounds, Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976.)

More important, defendant's affirmative defenses were given the consideration properly due them by the trial court within the confines of *McHenry.*

For the above-stated reasons, we hold that the court's January 8, 1991, order is both final and appealable, and that the court's October 17, 1990, order properly granted summary judgment in plaintiff's favor.

Affirmed.

DiVITO and McCORMICK, JJ., concur.