HELLER FINANCIAL, INC., Plaintiff-Appellee, v. JOHNS-BYRNE COM-
PANY, Defendant-Appellant.

First District (2nd Division)   No. 1—93—1264

Opinion filed June 28, 1994.—Rehearing denied July 21, 1994.

Siebel, Whipple & Schofield, of Chicago (Paul F. Schofield, of counsel), for appellant.

Sachnoff & Weaver, Ltd., of Chicago (Nathan H. Dardick and Michael D. Richman, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

This appeal is actually the second one taken by the parties in this action. In the first appeal, *Heller Financial, Inc. v. Johns-Byrne Co.* (1992), 246 Ill. App. 3d 754, 617 N.E.2d 1, this court affirmed a partial summary judgment in favor of plaintiff, Heller Financial, Inc.; that judgment, however, did not resolve the full amount of damages due plaintiff from defendant Johns-Byrne Company.

This action began in 1985, when Microdot Lithoplate Company entered into an agreement to lease printing equipment from P.C. Leasing Corporation, the performance of which was guaranteed in writing by defendant. P.C. later assigned its rights in the various agreements to plaintiff.

In July 1989, Microdot defaulted on the lease agreement, and as permitted by the instrument, plaintiff accelerated the payments due under the lease, demanding approximately $132,000 from Microdot or defendant. After attempts to sell the equipment failed, plaintiff filed suit against defendant to recover the full amount due under the lease. It sought, in addition, interest, penalties, attorney fees and costs. Defendant asserted a variety of affirmative defenses to plaintiff's right to recovery, which included an alleged breach of the duty to mitigate, a charge that the contract was unconscionable, a purported waiver of plaintiff's rights under the agreement and, finally, the frustration of a potential sale of the equipment by imposing unreasonable conditions on that sale. Most of these claims were struck by the court pursuant to plaintiff's motion.

Plaintiff then moved for summary judgment on the ground that the guaranty agreement rendered defendant unconditionally liable for any amount owing under the lease. In its motion, it sought interest on the amount owed at a rate of 5% as permitted by section 2 of the Interest Act. (Ill. Rev. Stat. 1991, ch. 17, par. 6402 (now 815 ILCS 205/2 (West 1992)).) On October 17, 1990, Judge Willard Lassers granted partial summary judgment and entered an order therefor in favor of plaintiff with regard to defendant's liability arising from the agreement, stating from the bench that "there [was] no question *** [that] there is liability for something. Now how much remains to be determined."

Before the court resolved that question, however, defendant again interposed three affirmative defenses which merely restated those which had not been previously stricken, and two new affirmative defenses or, alternatively, counterclaims. The first new claim main-

tained that plaintiff was seeking damages in excess of those it had actually suffered, and the other asserted that the lease was a security agreement governed by article 9 of the Illinois Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1991, ch. 26, par. 9—101 *et seq.* (now 810 ILCS 5/9—101 *et seq.* (West 1992))); thus, as a sale of secured equipment, which was how defendant characterized plaintiff's acceleration of the lease payments, it had to be commercially reasonable.

On January 8, 1991, after accepting memoranda from the parties and entertaining their arguments at a hearing, Judge Lassers entered an additional partial summary judgment on this claim in plaintiff's favor in the amount of $31,797.05. His order also provided:

> "that the remaining issues raised by defendant's objections to plaintiff's claim, including the proper present value discount, the proper credit for proceeds from the sale of the equipment and attorneys' fees and costs, be determined by a trial court at a future date."

The court explained that the purpose of its ruling was to arrive at the amount that was "unequivocally due and leave for the trier of fact the question of whether there may be additional sums due."

Later, with an order entered on April 30, 1991, the court amended its January 8, 1991, order, with which it recalculated the amount owed plaintiff. It deducted the present value discount of the accelerated lease payments at a 13% interest rate and it added the statutory minimum prejudgment interest rate of 5% for the term during which the sum was owing. It accordingly entered a judgment in the amount of $29,754.28 plus post-judgment interest, which judgment amount was in lieu of the one entered on January 8, 1991. By this order the court also certified its order under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), after which defendant appealed the partial summary judgment and which we affirmed. *Heller Financial, Inc. v. Johns-Byrne Co.* (1992), 246 Ill. App. 3d 754, 617 N.E.2d 1.

While the appeal was pending, Judge Kenneth Gillis, to whom the case had been assigned for trial, heard evidence relating to those issues which remained unresolved in the summary judgment proceedings, the parties having stipulated to a number of them: (1) that the total undiscounted amount owed under the lease was $114,513; (2) that plaintiff gave proper notice of the intent to accelerate the lease on October 19, 1989; and (3) that the present value of the amount owed, using a discount rate of 13%, was $104,110.58. Before beginning trial on the remaining matters, the litigants also orally stipulated that any amount to which plaintiff was entitled would be reduced by a setoff of $89,000, which was the

amount to be credited to defendant as a result of the sale of the printing equipment.

According to plaintiff, the remaining issues to be tried were the legal fees and costs to which it was entitled pursuant to the "fee-shifting" clause in the lease and the amount of interest which had accrued on the outstanding rental payments; and in order to determine this amount the court would be called upon to construe a clause in the lease which provided that the interest rate on any debt would be the highest one allowed by law. Plaintiff argued before the court that since it customarily charged 1.5% per month on its receivables, the proper rate of interest under the lease should be that rate annualized, or 18%.

To prove the reasonableness of its fee petition, plaintiff presented the testimony of John Payne, one of its vice-presidents, who oversaw the corporation's relationship with its outside counsel, and the billing summaries submitted each month to plaintiff for the prosecution of the instant action, which, when totalled, showed that plaintiff had paid to its legal representatives nearly $80,000. The summaries were admitted into evidence without objection.

Payne recalled that as a part of his duties, he reviewed the statements each month prior to giving his approval for payment. If he considered a charge to be improper or excessive, he would seek a reduction of the amount owed. He also stated that the corporation's general counsel had to agree with his assessment as to the reasonableness of a bill before it could be paid. Finally, Payne opined that based on his broad experience in overseeing various, and what he termed "major," law firms in Chicago, the amount billed by plaintiff's attorneys in this action was reasonable in view of the extensive services they provided.

Nathan H. Dardick, who was the lead counsel and a name partner in the law firm hired by plaintiff to represent it in this action, testified to his long and varied experience at the bar. He also gave an overview of the qualifications of the other attorneys and paralegals who worked with him on the case. He described for the court how he prepared the monthly billing summary which he sent to plaintiff, explaining that the summary was a compilation of the time sheets of the individual attorneys or paralegals who worked on the file. He attested to scrutinizing each charge made to his client before allowing it to be added to the monthly invoice. Next, he described for the court the difficulty he encountered in bringing this case to a conclusion. He suggested that the reason the fees were so high in what should have been a relatively garden-variety collection action, was due to the "roadblocks" put up by defendant in its effort to frustrate plaintiff's attempt to secure what it was owed.

He explained his strategy with respect to the interest rate to which plaintiff contended it was entitled under the lease. He maintained that he fixed the rate at 5% in the motions for summary judgment, in memoranda and at hearings before Judge Lassers, to ensure that he could secure at least a partial summary judgment. He reasoned that defendant could not disagree with this rate since it was provided by statute, but he insisted that the use of that rate before Judge Lassers was never intended to forego any additional interest which would be due to plaintiff under the "highest legal interest rate" clause of the lease.

Defendant countered Dardick's testimony by offering that of Terrence Coughlin, a private practitioner who served on the Chicago Bar Association's professional fees committee. He had been its vice-chairman and later chairman in 1984 through 1986. The committee fields and investigates complaints from clients concerning alleged excessive fees charged by their attorneys. It also serves as an arbiter to resolve fee disputes. Coughlin estimated that he had been a member of an arbitration panel in around 150 such cases.

He stated that in determining the proper fees to be charged, the standard he used was "a reasonable fee," which he judged by comparing the fee charged against the eight criteria laid down by the supreme court in the Code of Professional Conduct. (See 134 Ill. 2d R. 1.5(a).) After applying those factors, he posited that the total fees petitioned for in the case at bar were excessive, especially in view of the amount of plaintiff's underlying contract claim, which totalled only slightly more than $30,000. He admitted on cross-examination, however, that in forming that opinion, he did not review each of the time sheets submitted in the case.

Judge Gillis held that plaintiff was entitled to recover $100,445.68 in attorney fees, costs and interest, for which he entered judgment, representing an amount in addition to that granted by Judge Lassers in his earlier grant of partial summary judgment. In explaining his ruling, Judge Gillis stated that he was impressed by the quality of plaintiff's legal representation and that the evidence presented supported the conclusion that the fees paid for those services were reasonable. On the issue of the appropriate rate of interest, the court considered the language used in the lease, which dictated that the rate on any arrearage would be the highest allowed by law, to be anachronistic since Illinois no longer had usury laws. Nevertheless, consistent with the clause, the court prescribed a rate it considered to be most equitable and determined it to be 13%. The court reasoned that this rate was fair since the lease itself carried an implicit rate of interest at that percentage.

Defendant filed a post-trial motion asking the court for a new trial or to reconsider its judgment, which was denied. On April 5, 1993, defendant filed a notice of appeal from the order of the circuit court denying of its post-trial motion. In a motion which was taken with this appeal and is not of record, plaintiff sought to dismiss the appeal, contending that the notice did not confer jurisdiction on this court because the issues raised therein did not arise from the order from which the appeal is taken. In another motion taken with the case, defendant moved this court to amend its notice so as to include the order entered on February 4, 1993.

I

The first issue to be resolved by us concerns our very ability to consider the issues raised by defendant in this court. According to plaintiff, this court lacks jurisdiction to address defendant's allegations in view of the fact that in its initial notice of appeal, defendant stated that it was seeking review of the circuit court's order dated March 23, 1993, with which order the circuit court denied defendant's motion to reconsider its judgment in favor of plaintiff.

Defendant does not argue on appeal that the court somehow abused its discretion in denying its post-trial motion. Instead, it maintains that the court erred with respect to the underlying order dated February 4, 1993, with which the court handed down its judgment in this case. Plaintiff insists, however, that the notice of appeal does not cite this order, and defendant's attempt to amend the notice to include the proper order was filed too late to comport with the deadline for such amendments imposed by Supreme Court Rule 303(c)(4) (134 Ill. 2d R. 303(c)(4)). It concludes that since the notice did not, and now cannot, designate the proper order appealed from, this court is precluded from considering the issues which stem from that order; thus, this appeal should be dismissed.

■ To decide this issue, we must first rule on a motion we took with the case by which defendant sought to amend its notice of appeal to include the court's order of February 4, 1993. This court derives its authority to allow an appellant to amend a notice of appeal from Supreme Court Rule 303(c)(4), which provides in pertinent part:

"The notice of appeal may be amended without leave of court within 30 days *** [after its original filing]. Thereafter it may be amended only on motion, in the reviewing court. *** An amendment specifying a part of the judgment not specified in the original notice of appeal may not be made later than 30 days after the entry of the judgment, or, if a timely post-trial motion directed against the judgment is filed, ***, later than 30 days after the

entry of the order disposing of the last pending motion, except upon motion pursuant to paragraph (e) of this rule." 134 Ill. 2d R. 303(c)(4).

In *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 465 N.E.2d 113, the court was called upon to determine whether that provision empowered the appellate court to allow an amendment of a notice of appeal so as to include a judgment in favor of one defendant which went unnamed in the initial notice. Quoting from the decision in *Brenkman v. Belmont Marketing, Inc.* (1980), 87 Ill. App. 3d 1060, 1062-63, 410 N.E.2d 500, 503, the *Reeder* court wrote:

> " 'After the expiration of the initial 30-day period for filing notice of appeal, and the additional 30-day safety-valve period allowed by Supreme Court Rule 303(e) [citation], the appellate court is without jurisdiction to permit further amendments of the notice of appeal.' " (*Reeder*, 124 Ill. App. 3d at 1048, 465 N.E.2d at 116.)

Since the motion to amend in that case was filed more than 60 days after the initial filing of the notice of appeal, the court held that it lacked the jurisdiction to allow the amendment in order to add an originally unnamed defendant, who was consequently dismissed from the appeal. (Accord *Ebert v. Dr. Scholl Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 484 N.E.2d 1178 (amending notice could not be permitted when motion to amend was filed more than eight months after the denial of the final post-trial motion); *First Finance Co. v. Ross* (1965), 64 Ill. App. 2d 474, 211 N.E.2d 588 (motion to amend filed 50 days after Rule 303 safe-harbor period deprived court of ability to allow the motion).) Here, defendant filed its motion to amend the notice on May 25, 1993, approximately 15 days later than the total time frame provided by the rules. Thus, we are incapable of allowing its motion, which must, therefore, be denied.

Because defendant cannot, under the rules, amend its notice so that it indicates the proper judgment from which it appeals, we must next decide whether the notice actually filed confers jurisdiction on this court to reach the issues presented by defendant. It is, of course, the notice of appeal which provides us with the power to decide those matters which are properly presented therein. (134 Ill. 2d Rules 301, 303(c); *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 579 N.E.2d 322; *Bell Federal Savings & Loan Association v. Bank of Ravenswood* (1990), 203 Ill. App. 3d 219, 560 N.E.2d 1156; *Smock v. Hale* (1990), 197 Ill. App. 3d 732, 555 N.E.2d 74.) However, where an alleged defect in the notice is one of form and not of substance, this court is not necessarily deprived of jurisdiction over the real issues arising from the notice. *Jewel Cos. v. Serfecz* (1991), 220 Ill. App. 3d 543, 581 N.E.2d 186.

■ An additional and more pragmatic purpose of the notice is to inform the party who prevailed in the circuit court as to which aspect of the judgment appealed from will be reviewed. (*People ex rel. Pickerill v. New York Central R.R. Co.* (1945), 391 Ill. 377, 63 N.E.2d 405; *Lake County Trust Co. v. Two Bar B, Inc.* (1992), 238 Ill. App. 3d 589, 606 N.E.2d 258.) Due to this alternate purpose, the notice is to be liberally construed when determining what matters were properly raised in the notice, and a defect will be deemed one of form, so long as that construction does not prejudice the appellee. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.) In recognition of this rule, the *Burtell* court observed that, "[b]riefs, and not the notice of appeal itself, specify the precise points to be relied upon for reversal." *Burtell*, 76 Ill. 2d at 433, 394 N.E.2d at 382-83; see also *Smock*, 197 Ill. App. 3d at 737-38, 555 N.E.2d at 77 ("[Since] [t]he notice of appeal is to be liberally construed in the absence of prejudice to the litigants[,] [i]t *** follows [that] the notice of appeal may be construed to bring up for review an earlier unspecified order where that order is a step in the procedural progression to the specified order").

An assertion similar to the one made by plaintiff was advanced by the defendant in *State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d 1027, 477 N.E.2d 509. There, the notice stated that the plaintiff sought review of the trial court's denial of its motion to vacate the dismissal of its complaint. The appellate court rejected the defendant's argument that the appeal should be dismissed on the ground that it would actually address issues stemming from the earlier dismissal, issues which were not covered by the order mentioned in the notice. The appellate court held that although, technically, it was more correct to cite the earlier order in the notice, the issues arising under the earlier order were properly before the court because "all of the preceding orders [were brought before the court] even though the *** ruling [from which the appeal was taken] was not a judgment." *State Mechanical Contractors*, 132 Ill. App. 3d at 1029, 477 N.E.2d at 510.

■ Here, in its notice of appeal, defendant seeks review of the trial court's refusal to reconsider its judgment, a ruling wherein the court necessarily contemplated once again all of the orders which comprised its ultimate judgment in the case. Thus, all of those previous orders were subsumed by the order from which defendant's appeal is taken. Moreover, plaintiff does not suggest that the misdesignation of the proper order prejudiced it in any way, or that it put it at a disadvantage in defending the judgment from which this appeal is actually taken. Therefore, after liberally construing the notice, we

find that it presents to us all of the issues about which defendant complains on appeal. See *Coleman v. Illinois Central R.R. Co.* (1973), 13 Ill. App. 3d 442, 443, 300 N.E.2d 297, 298 (holding that a notice of appeal which sought review of the trial court's denial of a post-trial motion for a judgment notwithstanding the verdict or a new trial was sufficient to allow the court to review the actual judgment entered on the verdict).

## II

■ Turning to the merits of this appeal, defendant, in its first assignment of error, complains that plaintiff presented insufficient evidence to justify the circuit court's award of nearly $80,000 in costs and attorney fees pursuant to a "fee-shifting" clause in the lease, in a collection action where the underlying recovery was less than $30,000 before interest. While the parties may, by a private agreement, override the "American Rule," which holds that each will be responsible for any legal fees it incurs in a civil litigation, such contractually provided fees will be approved by the court only if they are reasonable. (*E.g., Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488.) The litigant seeking the legal fees bears the burden of proving the reasonableness of its petition for fees and, therefore, must provide the court with sufficient evidence with which it may make an informed assessment of the reasonableness of the fees desired. (*E.g., Harris Trust & Savings Bank v. American National Bank & Trust Co.* (1992), 230 Ill. App. 3d 591, 594 N.E.2d 1308.) But, "[t]he determination as to what constitutes reasonable compensation is a matter peculiarly within the discretion of the trial court, and that determination will not be disturbed on review absent an abuse of discretion." *Chicago Title & Trust Co. v. Chicago Title & Trust Co.* (1993), 248 Ill. App. 3d 1065, 1072, 618 N.E.2d 949, 954, citing *Harris Trust & Savings Bank*, 230 Ill. App. 3d at 595; *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890.

Defendant relies principally on *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424, the leading case in this area, where this court affirmed the circuit court's assessment that the petitioner was not entitled to reimbursement in the amount it sought in its fee petition for want of specific evidence of the legal work done. In so holding, the court roughly sketched the type of evidence which would satisfy its requirement of specificity.

■ The court first reasoned that although at its most simplistic the law considers an appropriate legal fee as being one which charges a reasonable sum for reasonable services provided, a petition seeking

such fees must do more than merely total up the hours expended on the project and then multiply that sum by a fixed hourly rate. The purpose of a hearing on the petition is to provide sufficient information to allow the court to assess intelligently the reasonableness of the fees charged. This would include information detailing "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.

Furthermore, this information standing alone is insufficient to establish an entitlement to the fees prayed for, but must be supplemented by information advising the court of the skill of the attorneys assigned to the case, the difficulty of the issues involved, and what other attorneys of equal or similar standing in the profession would have charged for their legal representation in the matter. The circuit court should also consider "whether there is a reasonable connection between the fees and the amount involved in the litigation." (*Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.) Subsequent cases have added to this list, suggesting, for instance, that in reaching its decision as to what amount of fees would be reasonable, the trial judge may rely on her own experiences as well. *Chicago Title & Trust*, 248 Ill. App. 3d at 1073, 618 N.E.2d at 955.

To meet the quantum of evidence required by *Kaiser*, plaintiff offered the testimony of John Payne, a vice-president of its asset management division, and that of its lead attorney in this action, Nathan Dardick. Payne stated that he had reviewed and approved the legal bills tendered by Dardick for his services throughout the protracted litigation. Payne also identified the invoices for legal fees which plaintiff offered into evidence. On each statement, plaintiff was given a breakdown of the time spent by each attorney on the case file during that month, at what amount each attorney's time was billed and it roughly summarized the type of work done on the file.

Dardick provided the court with the necessary background information prescribed by *Kaiser*. He gave the court an overview of his experience and qualifications and described the type of work he generally did for plaintiff. Then, in some detail, he described the efforts which went into the prosecution of this cause of action, which · included filing the complaint, responding to defendant's affirmative defenses, seeking partial summary judgment and defending the same on appeal. This is, of course, in addition to obtaining evidence through discovery and complying with defendant's requests for the same.

■ Defendant contends that the evidence presented in support of the fees was unsatisfactory. As for the summaries of services contained in the monthly statements to plaintiff, it argues that

numerous courts have found such evidence deficient in these cases, maintaining instead that the cases require detailed, contemporaneous time records. (See, *e.g., Fitzgerald v. Lake Shore Animal Hospital, Inc.* (1989), 183 Ill. App. 3d 655, 661-62, 539 N.E.2d 311, 316.) However, as plaintiff points out, it has long been a rule of evidence in this State that where the business records to be produced at trial are voluminous, they may be summarized in the interest of economizing the trial and to avoid taxing the court with minutia.

This rule was examined by the court in *Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co.* (1990), 195 Ill. App. 3d 1036, 1051, 552 N.E.2d 1336, 1345, where it wrote:

> "When original documents are voluminous and cannot conveniently be examined to extract the fact to be proved, any competent witness who has seen the originals may testify to the fact ***. [Citations.] In addition, the documents summarized must be available in court or made available to the opponent."

(Accord *Veco Corp. v. Babcock* (1993), 243 Ill. App. 3d 153, 611 N.E.2d 1054.) In the instant case, plaintiff averred in its brief that the original time records were indeed voluminous, something which defendant did not challenge. Furthermore, copies of the individual daily time sheets of the lawyers and paralegals who worked on this case were in court, available for inspection. More important, plaintiff stated that copies of the daily sheets had been provided to defendant pursuant to a discovery request. This provided it with a powerful impeachment tool with which it could confront plaintiff's witnesses in the event that the billing summaries overstated the fees paid by plaintiff or earned by its attorneys. Accordingly, under *Landmark Structures*, plaintiff was entitled to prove the reasonableness of its fee petition using summaries in addition to the testimony of its witnesses. The combined weight of this evidence, in turn, is sufficient to compel us to sustain the circuit court's judgment. That is especially true here given the very deferential standard of review to which we must adhere.

Moreover, we find the cases defendant cites as being distinguishable from the one at bar, because in each of those cases, the purported entitlement to fees was not supported by evidence, but depended fully upon the assertions made in the petition itself, or by affidavits appended thereto. For instance, in *64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 387 N.E.2d 751, the court found that a statement by a client's accountant attesting to the indebtedness of his client to an attorney for legal service was inadequate to justify an award of legal fees. Stating that "[l]egal fees may not be blindly awarded by a court," it remanded the action to the

circuit court to allow it to hold a proper hearing to assess the reasonableness of the fees requested. 69 Ill. App. 3d at 648.

In *Fitzgerald,* we held that the circuit court abused its discretion in awarding $28,836.94 in fees in a detainer action where the only issue before the circuit court was when the defendant would surrender possession. The court made this determination without the benefit of an evidentiary hearing, relying instead on what the trial judge candidly characterized as a "wild guess."

Here, the circuit court held a proper hearing during which plaintiff buttressed its petition with the testimony of an officer whose duties included approving the fees charged by the corporation's attorneys, and, more important, with its lead attorney's testimony, who explained the need for the fees charged and was subjected to cross-examination on that topic. Thus, the court was able to assess the veracity of the claims made in the petition based on the perceived believability of the individual who provided the services for which plaintiff sought recompense. In addition, the court could look to the billing summary evidence and finally rely on its own knowledge and experience in the profession. After considering all of the foregoing, the court expressly found that the fees were reasonable. Since this determination had a basis in the evidence presented to it, the court did not abuse its wide discretion by granting the full amount of fees prayed for in plaintiff's petition.

## III

Defendant's second challenge to the judgment of the circuit court concerns its holding that plaintiff was entitled to interest at a rate of 13% on the debt arising from the lease, *i.e.,* both the past-due rent and the present value of the accelerated future rental payments, from the time that Microdot defaulted on the lease until plaintiff received the partial summary judgment from Judge Lassers on January 8, 1991. A clause in the lease provided that the lessor would be entitled to receive interest on any amount owing under the instrument, calculated at the highest rate allowed by law. Defendant urges that Judge Lassers' order of January 8, 1991, disposed of this issue by ruling that plaintiff was entitled to the statutory prejudgment interest rate of 5%. (Ill. Rev. Stat. 1991, ch. 17, par. 6402 (now 815 ILCS 205/2 (West 1992)).) It maintains, therefore, that under either *res judicata,* collateral estoppel, judicial estoppel or the doctrine of the "law of the case," plaintiff was barred from relitigating this issue before Judge Gillis; in addition, once Judge Lassers fixed the interest rate chargeable to defendant in that judgment, which was subsequently affirmed by this court on appeal, Judge Gillis was powerless to change that determination.

■ We observe initially that since the judgment of Judge Lassers was given in this proceeding rather than in a separate one, the first three theories proposed by defendant are inapplicable. (See *Joseph T. Ryerson & Son, Inc. v. Manulife Real Estate Co.* (1992), 238 Ill. App. 3d 550, 606 N.E.2d 463 (*res judicata* prohibits relitigation of the same cause of action against the same party in a subsequent proceeding); *In re Nau* (1992), 153 Ill. 2d 406, 607 N.E.2d 134 (elements of collateral estoppel includes resolution of an issue in an earlier action against party to be estopped or her privy); *Ceres Terminals, Inc. v. Chicago Bank & Trust Co.* (1994), 259 Ill. App. 3d 836, 850 (observing that the doctrine of judicial estoppel "prevents a party from asserting inconsistent positions before courts in separate proceedings in order to receive favorable judgments in each proceeding")).) However, we may not dismiss so easily the last of defendant's theories because, in the event that Judge Lassers' order of January 8, 1991, actually decided the rate of interest, that rate would then have become the controlling "law of the case," as defendant has suggested.

■ "The law of the case doctrine binds a court to the particular views of law announced in a prior opinion unless the facts require a different interpretation." (*Bismarck Hotel Co. v. Sutherland* (1988), 175 Ill. App. 3d 739, 745, 529 N.E.2d 1091, 1095-96.) As the court explained in *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.* (1984), 125 Ill. App. 3d 1083, 1086-87, 466 N.E.2d 1116, 1119:

> "The rule of the law of the case is a rule of practice, based on sound policy that, where an issue is once litigated and decided, that should be the end of the matter and the unreserved decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit. [Citations.]"

Plaintiff argues that the law of the case doctrine prohibits re-addressing only issues which have been raised and resolved in a reviewing court, but that clearly is not the law. An order of the circuit court which was final and appealable and which was left undisturbed by the appellate court will also become the controlling rule of the case in subsequent hearings in that same action. (See *McDonald's Corp.*, 125 Ill. App. 3d at 1087, 466 N.E.2d at 1119 ("The *trial court's order* becomes 'law of the case' only if there is a final and appealable order" (emphasis added)); see also *Arnold Schaffner, Inc. v. Goodman* (1979), 73 Ill. App. 3d 729, 732, 392 N.E.2d 375, 377 ("[A] *trial court order* becomes the 'law of the case' only if there is a final and appealable order" (emphasis added)).) Accordingly, we find our task to be that of determining whether Judge Lassers' earlier order, which, as evidenced by the plaintiff-requested Rule 304(a) finding

(134 Ill. 2d R. 304(a)) was unquestionably final and appealable, fully resolved the interest rate question.

The first indication of what Judge Lassers decided can be drawn from the final order itself. It stated that the issues which remained after the judgment included "the proper present value discount, the proper credit for proceeds from sale of the equipment and attorneys' fees and costs." Although by its use of the word "including" the order does not profess to provide an exclusive list of the outstanding issues in the action, that appears to be the clear import of its inartfully written final sentence.[1]

This conclusion gains additional support from the transcripts of the proceedings which led to the order in question. There, before announcing his decision, Judge Lassers narrowed the inquiry to the questions his order would decide. The court stated:

> "The second issue is the question of the 5 percent interest that creditors are allowed under Chapter 17 on amounts that are calculable."

Later, while orally explaining his judgment, Judge Lassers said:

> "I think that [plaintiff] is entitled to interest at the statutory rate of 5% on the $117,000 for the period from September 25, 1989 to January 30, 1990, plus interest at 5 percent on $28,418.88, from January 30, 1990."

The final support for the belief that Judge Lassers was under the view that he was fully resolving the appropriate rate of interest was his explication on which issues were not amenable to summary judgment but which would need to be tried in the action. He stated that the issues left were the proper rate at which to calculate the present value of the amount owed, the credit to be set off against the amount owed from the sale of the equipment and the attorney fees to which plaintiff was entitled. The method in which the court presented the issues which remained could be seen as implying that he deemed his list to be exclusive.

Plaintiff claims that the full amount of the interest was not before the court. It contends instead that Judge Lassers was only determining the floor of damages to which it was entitled. It maintains that

---

[1]We also note parenthetically that, as is the custom in the circuit court of Cook County, the order was prepared for Judge Lassers' signature by the prevailing party, which in this case was plaintiff. Thus, consistent with the venerable maxim, *contra proferentum*, we must resolve any ambiguities arising from this "inartful" language against its drafter. See, *e.g.*, *Duldulao v. St. Mary of Nazareth Hospital Center, Inc.* (1987), 115 Ill. 2d 482, 505 N.E.2d 314; *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874.

the court used the rate of 5% for the purpose of setting this floor since, as the statutorily prescribed prejudgment interest rate, defendant could not deny that it should be credited for at least that amount.[2]

But, even assuming that this "floor-laying" was the actual intent of plaintiff in its summary judgment motion, nowhere in the record does it appear that plaintiff apprised Judge Lassers that it was pegging only the barest minimum rate, which would then be supplemented at a later trial. The first time this argument crops up in the record was when plaintiff appeared before Judge Gillis, an instance which would be too late under the law of the case doctrine to alter Judge Lassers' interest rate determination.

We note further that with the exception of its complaint, which sought the highest rate allowed by law, each filing made by plaintiff, including its initial motion for summary judgment, its various memoranda in support thereof, and during oral argument before Judge Lassers, plaintiff unreservedly cited 5% as the rate to which it was entitled. None of plaintiff's filings or arguments advanced or explained the "minimum judgment" theory, nor did any suggest to Judge Lassers that his judgment on the rate would be subject to a later upward revision. It appears to us that Judge Lassers' final and appealable order of January 8, 1991, at the behest of plaintiff, whether or not inadvertent, set at 5% not the floor but the ceiling of interest to which plaintiff was entitled; therefore, under the law of the case doctrine, Judge Gillis should not have altered that prior judgment. We are obligated, as a result of this error, to reverse his judgment insofar as it gave plaintiff any interest in excess of that to which it would have been entitled had the rate remained at 5% as Judge Lassers decided.

In sum, we affirm the circuit court as to its grant of attorney fees and costs, but we reverse its grant of any prejudgment interest in excess of that previously determined by Judge Lassers. Accordingly,

---

[2]In argument before us, plaintiff appeared to have abandoned this theory, insisting that the 13% rate prescribed by Judge Gillis would not supplement the 5% granted by Judge Lassers. It conceded that this would constitute "double-dipping." It seemed to have been suggesting instead that the 13% rate would apply to another claim. However, from our scouring of the record, we can confidently state that the only indebtedness on which plaintiff would be entitled to interest was that arising from the past due rent and the accelerated rental payments. Since Judge Lassers' orders expressly awarded plaintiff judgment on this claim, we must necessarily conclude that plaintiff misspoke when it responded to us that the 13% obtains to a second substantive claim; we accordingly ignore that contention.

we amend its judgment to reflect the amount of $79,690 in attorney fees and court costs of $1,992.67 for a total supplemental judgment for plaintiff of $81,682.62.

Affirmed in part; reversed in part.

DiVITO, P.J., and McCORMICK, J., concur.