25 June 1999

 Nos. 2--97--1309 & 2--98--0006 cons.  

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

REYNA BENITEZ, MARIA VELASQUEZ, and NATALIE POYER,

Plaintiffs-Appellants,

v.

KFC NATIONAL MANAGEMENT COMPANY,

Defendant-Appellee

(Donald Binninger, Ricardo Castro, Lucio Castrejon, and Guillermo Castrejon, Defendants-Appellants; Javier Deloya, Defendant). 

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Lake County

No. 95--L--643

Honorable

Terrence J. Brady,

Judge, Presiding.

REYNA BENITEZ, MARIA VELASQUEZ, and NATALIE POYER,

Plaintiffs-Appellants and Cross-Appellees,

v.

KFC NATIONAL MANAGEMENT COMPANY,

Defendant-Appellee and Cross-Appellant

(Donald Binninger, Ricardo Castro, Lucio Castrejon, Guillermo Castrejon, and Javier Deloya, Defendants).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Lake County

No. 95--L--643

Honorable

Terrence J. Brady,

Judge, Presiding.

_________________________________________________________________

JUSTICE COLWELL delivered the opinion of the court:

Reyna Benitez, Maria Velasquez, and Natalie Poyer
 (collectively, plaintiffs) worked with 
Donald Binninger, Ricardo Castro, Lucio Castrejon, Guillermo Castrejon, and Javier Deloya
 (collectively, employee-defendants) at a Kentucky Fried Chicken in Northbrook.  Plaintiffs filed suit against employee-defendants and KFC National Management Company (KFC), alleging, 
inter alia
, that employee-defendants engaged in a systematic spying operation on plaintiffs through a hole in the ceiling of the KFC women’s bathroom.  The circuit court of Lake County dismissed KFC from the lawsuit, and the case subsequently proceeded to trial against four of the five employee-defendants.  After a bench trial, the circuit court entered judgments in favor of each plaintiff and against the four employee-defendants.  Plaintiffs and employee-defendants appealed, and KFC filed a cross-appeal.

The issues on appeal are as follows: (1) whether the intentional infliction of emotional distress claim against employee-defendants in plaintiffs’ fifth amended complaint related back to plaintiffs’ original complaint; (2) whether plaintiffs stated a cause of action for intentional infliction of emotional distress; (3) whether plaintiffs’ invasion of privacy claims were barred by the one-year statute of limitations of section 13--201 of the Code of Civil Procedure (Code)(735 ILCS 5/13--201 (West 1994)); (4) whether plaintiffs’ claims were preempted by section 8--111(C) of the Illinois Human Rights Act (775 ILCS 5/8--111(C) (West 1992)); (5) whether the circuit court improperly struck plaintiffs’ second amended complaint; (6) whether the Workers’ Compensation Act (820 ILCS 305/1 
et seq
. (West 1992)) preempted plaintiffs’ claims; (7) whether plaintiffs’ claims against employee-defendants were 
res judicata
; (8) whether plaintiffs proved their intentional infliction of emotional distress claim; and (9) whether the circuit court erred in denying KFC’s motion for sanctions against plaintiffs.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are former female employees of KFC.  They worked at KFC as cooks, cashiers, and food servers.  Each employee-defendant worked for KFC in the same capacities as plaintiffs except for Binninger, who was plaintiffs’ supervisor.  On March 9, 1995, plaintiffs filed suit against employee-defendants and KFC for invasion of privacy and negligence.  Plaintiffs’ complaint alleged that between October 1992 and December 1993 employee-defendants (a) poked holes in the ceiling of KFC’s women’s restroom, (b) observed plaintiffs disrobing and using the restroom facilities, (c) took pictures of plaintiffs through the hole in the ceiling, (d) described plaintiffs’ private anatomies to others, (e) viewed and photographed female customers using the restroom, and (f) sold expired and tampered-with food to the general public.  After KFC answered the complaint and raised several affirmative defenses, plaintiffs amended the complaint to include KFC’s correct corporate name.  All other allegations remained the same.

KFC subsequently moved to strike as irrelevant and scandalous the allegations that employee-defendants spied on female customers and sold expired and tampered-with food.  While KFC’s motion was pending, plaintiffs sought leave of court to file a second amended complaint.  Judge William Block granted both motions, and plaintiffs filed their second amended complaint in August 1995.

The second amended complaint contained three counts: one against employee-defendants entitled "invasion of privacy," one against KFC entitled "negligent retention of employees," and one against KFC entitled "negligent hiring."  Plaintiffs included the same facts that Judge Block struck from the first amended complaint and further alleged that employee-defendants locked one employee in a freezer and chased another with a butcher’s knife.  KFC moved to strike the second amended complaint on the grounds that it contained the same alleged scandalous and impertinent information as the first.  Before Judge Block ruled on KFC’s motion to strike, plaintiffs sought leave to file a third amended complaint, which was virtually identical to the second amended complaint.  On October 3, 1995, Judge Block granted KFC’s motion to strike, denied plaintiffs leave to file the third amended complaint, and granted plaintiffs leave to file a fourth amended complaint.  Referring to plaintiffs’ customer-related allegations, Judge Block ordered plaintiffs to refrain from stating claims on behalf of third parties.

Plaintiffs filed their 12-count fourth amended complaint on October 23, 1995.  Each of the three plaintiffs brought four causes of action.  Counts I-III alleged invasion of privacy against employee-defendants.  Counts IV-VI, entitled "invasion of privacy, willful and wanton," were also directed at employee-defendants.  Counts VII-XII were against KFC.  Counts VII-IX were entitled "invasion of privacy--
respondeat superior
" and counts X-XII "negligent retention."

KFC subsequently moved to dismiss the counts against it pursuant to sections 2--615 and 2--619 of the Code (735 ILCS 5/2--

615, 619 (West 1996)).  KFC maintained (a) that plaintiffs’ invasion of privacy claims were barred by the statute of limitations set forth in section 13--201 of the Code (735 ILCS 5/13--201 (West 1994)); (b) that section 8--111(C) of the Illinois Human Rights Act (775 ILCS 5/8--111(C) (West 1992)) preempted the entire lawsuit; and (c) that the Workers’ Compensation Act (
820 ILCS 305/1 
et seq
. (West 1992)
) barred plaintiffs from going forward with their claims against KFC.  Without stating his reasons, Judge Block ruled in January 1996.  His order stated as follows: "KFC’s Motion to Dismiss is granted and Plaintiffs’ case as to KFC is dismissed 
with prejudice
; *** [t]his case remains open as to the remaining Defendants."  (Emphasis added.)  The order contains no language indicating that the order was appealable.

Employee-defendants had not answered any of the complaints, and, on January 23, 1996, plaintiffs filed a motion for entry of default.  Judge Block entered an order of default against employee-

defendants on March 5 and, on April 25, 1996, entered a judgment against them.

Four days later, plaintiffs filed a notice of appeal.  They sought review of Judge Block’s October 1995 and January 1996 orders.  Nonetheless, in May 1996, all but one (Deloya) of the employee-defendants filed motions to vacate the default judgment against them.  The circuit court granted those motions.  Plaintiffs advised the appellate court that the circuit court had vacated the default judgment and that the October 1995 and January 1996 orders were therefore no longer final.  Thus, the appellate court determined that it was without jurisdiction to entertain plaintiffs’ appeal at that time and accordingly dismissed that appeal.

The case proceeded against all of the employee-defendants except for Deloya.  In November or December 1996, however, Judge Block died, and the case was reassigned to Judge Terrence Brady.  Judge Brady dismissed counts IV-VI of the fourth amended complaint and granted plaintiffs leave to file a fifth amended complaint.  On January 8, 1997, plaintiffs filed a two-count, fifth amended complaint in which plaintiffs alleged the same facts as they did in their prior complaints.  Plaintiffs also alleged that Binninger was acting as the "alter ego" of KFC while the acts giving rise to the suit occurred.  In both count I (invasion of privacy) and count II (intentional infliction of emotional distress), plaintiffs sought recovery from employee-defendants and from KFC.

On February 18, 1997, KFC, relying upon Judge Block’s January 1996 order, moved to dismiss plaintiffs’ claims against it.  KFC also sought sanctions against plaintiffs pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  Judge Brady initially denied both parts of KFC’s motion in February 1997, and KFC thereafter moved for Judge Brady to reconsider his denial of KFC’s motion to dismiss.  In March 1997, Judge Brady vacated his February 1997 order, dismissed KFC from the lawsuit, and barred plaintiffs "from bringing further claims against KFC arising from the transactions and occurrences as set forth in Plaintiffs’ various pleadings."

In February 1997, employee-defendants filed a motion to dismiss pursuant to section 2--619 of the Code (735 ILCS 5/2--619 (West 1996)) in which they raised the same issues that are the subjects of the instant appeals.  Judge Brady denied the motion.

A bench trial began on November 24, 1997.  On November 25, 1997, Judge Brady entered judgment against employee-defendants.  The order stated that the physical evidence favored plaintiffs, that plaintiffs were more credible than were employee-defendants and that "[a]t all times D. 
Binninger
 was a supervisory manager for KFC."  Judge Brady found for plaintiffs and against employee-

defendants on all counts.  The order awarded Poyer $15,000, Benitez $50,000, and Velasquez $30,000.

ANALYSIS

I

[The following material is nonpublishable under Supreme Court Rule 23.]

RELATION BACK OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

We must first consider whether plaintiffs’ intentional infliction of emotional distress claim “related back” to their original complaint.  Section 2--616 of the Code (735 ILCS 5/2--616 (West 1994)) governs the relation back of amendments to pleadings.  This section permits the relation back of an amended pleading to avoid a statute of limitations if two requirements are met: (a) the originally pleading was timely filed and (b) the original and amended pleadings indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence alleged in the original pleading.  
Boatman’s National Bank v. Direct Lines, Inc.
, 167 Ill. 2d 88, 101-2 (1995).  Claims of intentional infliction of emotional distress are governed by the two-year statute of limitations of section 13--202 of the Code (735 ILCS 5/13--202 (West 1994)).  
Dahl v. Federal Land Band Association of Western Illinois
, 213 Ill. App. 3d 867, 872 (1991). 

The wrongful conduct of which plaintiffs complained began in October 1992 and ended in December 1993.  Plaintiffs filed their original complaint on March 9, 1995, and their fifth amended complaint on January 8, 1997.  Plaintiffs first attempted to state a cause of action for intentional infliction of emotional distress in the fifth amended complaint.  Apparently because plaintiffs did not discover the hole in the restroom ceiling until November or December 1993, employee-defendants state that, under the applicable statute of limitations, plaintiffs had through December 1995 to file a cause of action for intentional infliction of emotional distress.  Although they recognize that plaintiffs’ original complaint was timely filed, employee-defendants nonetheless assert that plaintiffs’ intentional infliction of emotional distress claim did not relate back to the March 1995 complaint.  We are unpersuaded by this argument.

Plaintiffs’ March 1995 complaint alleged that employee-

defendants poked holes in the KFC women’s bathroom, viewed and photographed plaintiffs in the bathroom and described plaintiffs’ anatomies to others.  Plaintiffs’ intentional infliction of emotional distress claims in their fifth amended complaint allege the same exact facts--that plaintiffs were victims of a systematic spying operation perpetrated by employee-defendants.  In other words, plaintiffs’ original complaint contains the same factual allegations which formed the basis of their intentional infliction of emotional distress claim.  Thus, plaintiffs’ emotional distress claim related back to their timely-filed complaint and was not time-barred by Section 2--616 of the Code (735 ILCS 5/13--202 (West 1994)).

[The preceding material is nonpublishable under Supreme Court Rule 23.]

II

[The following material is nonpublishable under Supreme Court Rule 23.]

SUFFICIENCY OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Next we must determine whether plaintiffs stated a cause of action for intentional infliction of emotional distress against employee-defendants.  This issue comes before us on Judge Brady’s denial of employee-defendants’ motion to dismiss for failure to state a cause of action.  As a court of review, we must accept as true all of plaintiffs’ well-pleaded facts and draw all reasonable inferences in favor of plaintiffs.  See 
Abels v. Safeway Insurance Co.
, 283 Ill. App. 3d 1, 5 (1996).

To state a claim for intentional infliction of emotional distress, a plaintiff must plead facts indicating (a) that the defendant’s conduct was truly extreme and outrageous (b) that the defendant intended to inflict or knew that there was a high probability that his conduct would inflict severe emotional distress upon the plaintiff and (c) that the defendant’s conduct in fact caused the plaintiff severe emotional distress.  
McGrath v. Fahey
, 126 Ill. 2d 78, 86 (1988).  Plaintiffs’ allegations in this case are sufficient.

The first element is the outrageousness of employee-

defendants’ conduct.  Plaintiffs’ alleged that employee-defendants (a) poked holes in the ceiling of the KFC women’s bathroom, (b) viewed and photographed plaintiffs undressing and using the facilities and (c) described plaintiffs’ bodies to others and (d) grabbed plaintiffs’ private body parts.  We conclude from these allegations that a reasonable jury could deem employee-defendants’ conduct outrageous.  See 
McGrath
, 126 Ill. 2d at 92 (if jury could conclude that defendant’s alleged conduct was outrageous, then outrageous allegation survives motion to dismiss).

Plaintiffs include additional allegations which support our conclusion.  The outrageousness of a person’s conduct is exacerbated where the offender is in a supervisory position over the plaintiff.  
Pavilon v. Kaferly
, 204 Ill. App. 3d 235, 245 (1990).  In such a circumstance, where the supervisor threatens to exercise his authority to the plaintiff’s detriment and is in a position to carry out those threats, the supervisor’s conduct is likely to be considered outrageous.  
McGrath
, 126 Ill. 2d at 86-7.  In this case, plaintiffs’ alleged that Binninger was the KFC store manager and that plaintiffs were forced to endure the physical harassment by employee-defendants “under threat of job reprisal and injury.”  Although the fifth amended complaint does not specifically aver that Binninger was in a position to fire or injure plaintiffs, a reasonable inference is that, as the store manager, he was.

The second element is whether plaintiffs pleaded facts indicating that employee-defendants intentionally or recklessly caused plaintiffs to suffer severe emotional distress.  Liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it.  
Public Finance Corp. v. Davis
, 66 Ill. 2d 85, 90 (1976).  Plaintiffs’ complaint indicated that employee-defendants poked holes in the women’s bathroom ceiling and viewed and photographed plaintiffs.  Certainly a reasonable juror could find that employee-defendants in doing so intentionally or recklessly engaged in conduct which could have caused plaintiffs severe emotional distress.  Furthermore, plaintiffs alleged that the conduct of employee-defendants, which included touching of plaintiffs’ private body parts without consent, was done with the intent “to injure and aggrieve” plaintiffs and bring “anguish and suffering” to their lives.  We hold that plaintiffs’ allegations satisfied the pleading requirement for the second element.

The third element is whether plaintiffs adequately pleaded that employee-defendants’ conduct caused them severe emotional distress.  As our supreme court stated in 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 25 (1992), it is difficult to “objectively measure” the severity of a plaintiff’s emotional distress from the complaint.  The 
Kolegas
 court found that, since the plaintiffs pleaded sufficient facts that the defendants’ conduct was outrageous, those same facts sufficiently supported the allegation that the plaintiffs suffered severe emotional distress as a result of that conduct.  
Kolegas
, 154 Ill. 2d at 25.  Here, not only have we concluded that plaintiffs pleaded sufficient facts that employee-defendants’ conduct was extreme and outrageous, plaintiffs also alleged the following: that employee-defendants’ touching of plaintiffs caused them “serious emotional distress” which plaintiffs continued to experience; that employee-defendants’ conduct caused plaintiffs embarrassment, mental anguish and emotional trauma and that employee-defendants’ conduct forced plaintiffs to undergo psychological treatment.  The allegations in the fifth amended complaint satisfy the pleading requirements for the third element.  We therefore hold that plaintiffs have adequately pleaded a cause of action for intentional infliction of emotional distress.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

III

STATUTE OF LIMITATIONS FOR INVASION OF PRIVACY COUNTS

Both KFC and employee-defendants maintain that plaintiffs’ invasion of privacy claims should be subject to the one-year statute of limitations of section 13--201 of the Code (735 ILCS 5/13--201 (West 1994)).  Plaintiffs complained of conduct which occurred between October 1992 and December 1993.  According to KFC and employee-defendants, since plaintiffs did not file their initial complaint until March 9, 1995, the one-year statute of limitations bars plaintiffs’ invasion of privacy claims.

Before we proceed, we must first categorize plaintiffs’ invasion of privacy claim.  Our supreme court first recognized a right to privacy in 
Leopold v. Levin
, 45 Ill. 2d 434, 439-41 (1970).  There are four privacy torts.  They are (a) the intrusion upon the seclusion of another, (b) the appropriation of name or likeness of another, (c) publicity given to private life, and (d) publicity placing person in false light.  
Lovgren v. Citizens First National Bank
, 126 Ill. 2d 411, 416 (1989), citing Restatement (Second) of Torts §§652B through E, at 378-394 (1977).  As noted in 
Lovgren
, the core of the tort of intrusion upon seclusion is the offensive prying into the private domain of another.  
Lovgren
, 126 Ill. 2d at 417
.  Examples of actionable intrusion upon seclusion would include invading someone’s home, illegally searching someone’s shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls.  
Lovgren
, 126 Ill. 2d at 417, citing W. Keeton, Prosser & Keeton on Torts §117, at 854-55 (5th ed. 1984).   We find that plaintiffs’ invasion of privacy claim is best categorized as "intrusion upon the seclusion of another."  See 
Lovgren
, 126 Ill. 2d at 419 (cause of action determined by allegations in complaint rather than by title).  Although plaintiffs asserted that employee-defendants also took pictures of plaintiffs in the KFC restroom and described to others plaintiffs’ private body parts, we do not believe that those allegations were the focus of plaintiffs’ invasion of privacy claim.  Rather, the allegations forming the crux of the privacy-related claim were that employee-defendants poked holes in the ceiling of the women’s bathroom and viewed plaintiffs disrobing and using the restroom facilities.  Without the allegations of voyeurism, we would be reluctant to classify employee-defendants’ conduct as invasion of privacy at all.  And certainly voyeurism constitutes an "offensive prying into the private domain of another."  See 
Lovgren
, 126 Ill. 2d at 417.

Our supreme court has not expressly recognized the tort of intrusion upon the seclusion of another (see 
Lovgren
, 126 Ill. 2d at 417), and the Illinois appellate court districts are split on whether the cause of action is recognized under Illinois law.  The
 
third and fifth districts have recognized the tort (
Melvin v. Burling
, 141 Ill. App. 3d 786, 789
 (3d Dist. 1986); 
Davis v. Temple
, 284 Ill. App. 3d 983, 994 (5th
 Dist. 1996)), while the first and fourth districts have held otherwise (
Kelly v. Franco
, 72 Ill. App. 3d 642, 646-47 (1st
 Dist. 1979); 
Bureau of Credit Control v. Scott
, 36 Ill. App. 3d 1006, 1008-9 (4th
 Dist. 1976)).  After careful review of the relevant authority, we expressly recognize a
 
cause of action for unreasonable intrusion upon the seclusion of another.  We find nothing in 
Leopold
 or in 
Lovgren
 that suggests that our supreme court would not recognize such a claim, and we are unpersuaded by the arguments against recognizing the tort.  In particular, the fact that the elements of intrusion upon seclusion may overlap with the elements of other torts (trespass, for example) is no reason to reject intrusion upon seclusion as a viable cause of action.  We likewise find no just reason not to recognize the tort simply because criminal statutes govern similar privacy-related matters.  See, 
e.g.
, 720 ILCS 5/14--1 (West 1996) (eavesdropping statute); 720 ILCS 135/1--1 (West 1996) (Obscene Phone Call Act).  After all, nothing precludes the victim of a criminal battery from also bringing a civil battery suit against his or her aggressor.

Having categorized plaintiffs’ cause of action as an intrusion upon the seclusion of another, we hold that section 13--201 of the Code does not apply to plaintiffs’ cause of action.  Section 13--

201 provides:

"Defamation--Privacy.  Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."  735 ILCS 5/13--201 (West 1994).

Clearly section 13--201 applies to libel and slander.  See 735 ILCS 5/13--201 (West 1994).  The statute also applies to the causes of action of public disclosure
 
of private facts (
Johnson v. Lincoln Christian College
, 150 Ill. App. 3d 733, 745-46 (1986)), the appropriation of name or likeness of
 
another (
Leopold
, 45 Ill. 2d at 439, 444
), and false-light publicity (
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 104-05 (1996)).  All three of these invasion of privacy torts differ from unreasonable intrusion upon the seclusion of another.  Publication is an element of each of the three former torts, whereas publication is not an element of unreasonable intrusion upon the seclusion of another.  See Restatement (Second) of Torts §§652B through E, at 378-394 (1977) (stating
 
the elements of all four causes of action).  The fact that
 
publication is not an element of intrusion upon seclusion is crucial, since the plain language of section 13--201 indicates that the one-year statute of limitations governs only libel, slander and privacy torts involving publication (see 735 ILCS 5/13--201 (West 1994); 
McDonald’s Corp. v. Levine
, 108 Ill. App. 3d 732, 737 (1982) (even if eavesdropping claim was actually a claim for intrusion upon seclusion, the one-year statute of limitations of what is now section 13--201 would not apply to plaintiffs’ cause of action because intrusion upon seclusion requires publication)).  Accordingly, since the statute does not refer to a cause of action for intrusion upon seclusion, we decline to read the statute as such.

In holding that intrusion upon seclusion is not governed by section 13--201, we acknowledge our disagreement with two cases relied upon by employee-defendants and KFC.  In 
Hrubec v. National R.R. Passenger Corp.
, 778 F. Supp. 1431 (N.D. Ill. 1991), 
reversed on other grounds
, 981 F.2d 962 (7th Cir. 1992), and in 
Juarez v. Ameritech Mobile Communications, Inc.
, 746 F. Supp. 798 (N.D. Ill. 1990), 
aff’d
, 957 F.2d 317 (1992), the United States District Court for the Northern District of Illinois held that claims of intrusion upon seclusion (
Hrubec
) and sexual harassment (
Juarez
) were time-

barred by section 13--201.  Nonetheless, we are not persuaded by those cases, since neither case provides any explanation whatsoever of why section 13--201 applies to a cause of action for intrusion upon seclusion.  Instead, we find the plain language of the statute controlling.

IV

ILLINOIS HUMAN RIGHTS ACT

We must next consider whether the instant matter fell within the exclusive jurisdiction of the Illinois Human Rights Commission.  Section 8--111(C) of the Illinois Human Rights Act (Act) provides in relevant part:

"Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."  775 ILCS 5/8--111(C) (West 1992).

If plaintiffs’ common-law actions against KFC and employee-

defendants are construed as "civil rights violation[s]" within the meaning of the statute, then it is clear that the circuit court lacked subject matter jurisdiction to consider plaintiffs’ claims.  See 
Geise v. Phoenix Company of Chicago, Inc.
, 159 Ill. 2d 507, 516 (1994).

The Act states that it is a "civil rights violation" for any employer or employee "to engage in sexual harassment." 775 ILCS 5/2--102(D) (West 1992)).  The Act defines sexual harassment as follows:

"any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when *** submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or *** such conduct has the purpose or effect of substantially interfering with an individual’s work performance or creating an intimidating, hostile or offensive working environment."  775 ILCS 5/2--101(E) (West 1992)).

KFC and employee-defendants maintain that plaintiffs’ fourth and fifth amended complaints were actually claims of sexual harassment falling within the exclusive jurisdiction of the Illinois Human Rights Commission.

Plaintiffs brought their fourth amended complaint against KFC under 
respondeat superior
 and negligent retention theories and, in their fifth amended complaint, alleged invasion of privacy and intentional infliction of emotional distress against employee-

defendants.  However, whether the Illinois Human Rights Commission had exclusive jurisdiction over this case turns on the allegations against employee-defendants, since only their alleged conduct could have possibly given rise to a cause of action for sexual harassment under the Act.  See
 
Geise
, 159 Ill. 2d at 517-18 
(although the counts against plaintiff’s employer were entitled "negligent hiring" and "negligent retention," the negligence allegations did not alter "the fundamental nature of her cause of action"; the actual allegation was sexual harassment against plaintiff’s supervisor).  The allegations against KFC are irrelevant, since where, as alleged here, an employee was sexually harassed by supervisory personnel, the Act imposes strict liability upon the employer (
Geise
, 159 Ill. 2d at 518).  Thus, if the claims against employee-defendants fell within the Act̓s exclusive jurisdiction, then the claims against KFC would necessarily follow.

Whether a circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.  
Maksimovic v. Tsogalis
, 177 Ill. 2d 511, 517 (1997).  The issue before us, then, is whether plaintiffs̓ claims of unreasonable intrusion upon seclusion and of intentional infliction of emotional distress would be inextricably linked to claims of sexual harassment.

In 
Maksimovic
, the plaintiff filed suit against her former manager, alleging assault, battery, and false imprisonment.  She claimed that he threatened to sexually assault her, touched her on private areas of her body, attempted to kiss her, and confined her in a walk-in cooler where he made sexual advances toward her.  
Maksimovic
, 177 Ill. 2d at 514-15.  The court stated:

"The sexual harassment aspect of this case is merely incidental to what are otherwise ordinary common law tort claims.  The plaintiff here has alleged facts sufficient to establish the elements of assault, battery and false imprisonment.  These are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the Act.  To the extent that the plaintiff has alleged the elements of each of these torts without reference to legal duties created by the Act, she has established a basis for imposing liability on the defendants independent of the Act.  Therefore, the plaintiff̓s tort claims are not inextricably linked to a civil rights violation and the circuit court may exercise jurisdiction over these tort claims."  
Maksimovic
, 177 Ill. 2d at 517.

Furthermore, said the court, there was no express indication that the legislature intended the Act to abrogate claims of assault, battery, and false imprisonment where such claims were factually related to sexual harassment.  
Maksimovic
, 177 Ill. 2d at 518.

In view of 
Maksimovic
, we find that the Act does not preempt the instant lawsuit.  First, the statute contains no indication that the legislature intended it to abrogate either cause of action at issue here.  Second,  plaintiffs̓ intentional infliction of emotional distress claims were not inextricably linked to a claim of sexual harassment.  As we have already discussed, plaintiffs alleged sufficient facts to support their intentional infliction of emotional distress claims.  Several cases have already held that, since the elements of intentional infliction of emotional distress " 'are quite different from those necessary to establish a "civil rights violation" under the Act,' " the Act does not preempt such a cause of action.  
Pavilon v. Kaferly
, 204 Ill. App. 3d 235, 244 (1990), quoting 
Ritzheimer v. Insurance Counselors, Inc.
, 173 Ill. App. 3d 953, 964 (1988); accord 
Sutton v. Overcash
, 251 Ill. App. 3d 737, 756 (1993).  We find the reasoning of those cases persuasive, especially in light of 
Maksimovic
.

Third, a claim of intrusion upon seclusion is not inextricably linked to a civil rights violation.  To state a claim for unreasonable intrusion upon seclusion, a plaintiff must plead facts that, if proved, show (a) that the defendant intruded or pried into the plaintiff’s seclusion without authorization, (b) that the intrusion would have been offensive or objectionable to a reasonable person, (c) that the matter upon which the intrusion occurred was private, and (d) that the intrusion caused anguish and suffering.  
Melvin
, 141 Ill. App. 3d at 789.  As 
Maksimovic
 teaches, if a plaintiff can allege the elements of a tort "without reference to legal duties created by the Act," then the tort is not inextricably linked to a civil rights violation.  
Maksimovic
, 177 Ill. 2d at 517.  We find that plaintiffs adequately alleged the elements of unreasonable intrusion upon seclusion.  Accordingly, since intrusion upon seclusion requires proof of more than is necessary to state a claim under the Act, the Act cannot preempt such a cause of action.

Plaintiffs’ allegations went beyond claims of sexual harassment as defined by the Act.  Accordingly, we hold that the torts of unreasonable intrusion upon seclusion and of intentional infliction of emotional distress are not inextricably linked to civil rights violations.

V

[The following material is nonpublishable under Supreme Court Rule 23.]

MOTION TO STRIKE PLAINTIFFS’ SECOND COMPLAINT

Plaintiffs contend that the circuit court erred in striking their second amended complaint.  In that complaint, plaintiffs alleged, 
inter alia
, that employee-defendants sold expired and tampered-with food to the public and that employee-defendants viewed and photographed female customers in the KFC restroom.  The circuit court struck the same language from plaintiff’s first amended complaint.  KFC moved pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 1996)) to strike the counts against it in the second amended complaint, and the court granted KFC’s motion.  The court denied plaintiffs leave to file their third amended complaint but allowed them leave to file their fourth amended complaint.

When reviewing the circuit court’s ruling on a section 2--615 motion to strike, we accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff.  Our review is 
de novo
.  
Board of Library Trustees v. CINCO Construction, Inc.
, 276 Ill. App. 3d 417, 424 (1995).

We find that plaintiffs’ allegations in their second amended complaint that employee-defendants sold tainted food to customers and spied on female customers were “scandalous and impertinent.”  See 
Biggs v. Cummins
, 16 Ill. 2d 424, 425 (1959) (per curiam) (where plaintiff’s brief, 
inter alia
, included "scandalous and impertinent material," circuit court properly struck the brief).  We also find that plaintiffs lacked standing to make those allegations.  See 
Helmig v. John F. Kennedy School D. 129
, 241 Ill. App. 3d 653, 658-59 (1993) (plaintiff’s injury must be personal; plaintiff cannot assert legal rights and interests of third parties).  If employee-defendants sold bad food to the public and spied on female customers, then certain KFC customers could claim resulting injuries; plaintiffs, on the other hand, could not.  The circuit court therefore properly struck those allegations from the first amended complaint, and, since plaintiffs’ second amended complaint contained the same previously-stricken customer-related allegations, we find that the circuit court did not err in striking plaintiffs’ second amended complaint in full.  Furthermore, in properly striking the second amended complaint, the circuit court granted plaintiffs leave to file another amended complaint and thereby allowed them to replead all of their remaining claims; thus plaintiffs were not harmed by the circuit court’s ruling.

Plaintiffs also argue that the circuit court erred in precluding them from filing their third amended complaint.  The third amended complaint, however, also contained 
the same customer-

related allegations.  We accordingly hold that the circuit court did not err in denying plaintiffs leave to file their third amended complaint.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

VI

[The following material is nonpublishable under Supreme Court Rule 23.]

WORKERS’ COMPENSATION ACT

We now address the issue of whether the Workers’ Compensation Act (WCA) (
820 ILCS 305/1 
et seq
. (West 1992)
) barred the claims against either KFC or employee-defendants.  Plaintiffs maintain that, if the circuit court in fact dismissed their claims against KFC based on the exclusivity provisions of the WCA, the circuit court was in error.  Employee-defendants also invoke the exclusivity provision of the WCA and contend that the circuit court erred in not dismissing plaintiffs’ claims against them.

KFC and employee-defendants raised the exclusivity provisions of the WCA as an affirmative defense in their respective section 2-

-619 motions to dismiss.  See 735 ILCS 5/2--619 (West 1996).  In reviewing the granting or denial of a section 2--619 motion, we must accept as true all well-pled facts in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff.  
Mayfield
, 258 Ill. App. 3d at 34.

The WCA generally provides the exclusive remedy for an employee who has suffered accidental injuries arising out of and in the course of his employment.  
820 ILCS 305/5
 (West 1992)
; 
Mayfield v. ACME Barrel Co.
, 258 Ill. App. 3d 32, 35 (1994)
.  The WCA bars an employee from bringing a common law cause of action against his or her employer unless the employee-plaintiff can prove (a) that the injury was not accidental, (b) that the injury did not arise from his or her employment, (c) that the injury was not received during the course of employment or (d) that the injury was not compensable under the WCA.  
Collier v. Wagner Castings Co.
, 81 Ill. 2d 229, 237
 (1980).  In other words, if, for example, the employee-

plaintiff’s injury was intentionally inflicted, then the WCA does not bar the claim from proceeding in the circuit court.

Claims Against KFC

KFC asserts that plaintiffs could not bring a common law tort action against it, since employee-defendants committed an intentional tort against plaintiffs.  KFC maintains that the injuries of which plaintiffs complained were accidental from KFC’s standpoint, and therefore the WCA provided plaintiffs with their sole remedy.

We believe that 
Meerbrey v. Marshall Field and Company, Inc.
, 139 Ill. 2d 455 (1990), is controlling as to this issue.  In 
Meerbrey
, the plaintiff, an employee of Marshall Field, filed suit for false imprisonment, false arrest and malicious prosecution.  The plaintiff named Marshall Field and one of its security guards as defendants.  The plaintiff alleged that, on two occasions, Marshall Field’s security guards improperly detained him and that another agent of Marshall Field filed a criminal complaint against him.  
Meerbrey
, 139 Ill. 2d at 459-60.  The plaintiff sought to hold Marshall Field liable under a 
respondeat superior
 theory.  
Meerbrey
, 139 Ill. 2d at 465.

The court held that the exclusivity provisions of the WCA barred the plaintiff’s common law 
respondeat superior
 claim against his employer, Marshall Field.  
Meerbrey
, 139 Ill. 2d at 465-66.  Although a co-employee intentionally injured the plaintiff, the court found that, from Marshall Field’s point-of-view, the injuries inflicted upon the plaintiff by a co-employee were “accidental” within the meaning of the WCA.  
Meerbrey
, 139 Ill. 2d at 463-64.  As to Marshall Field, the plaintiff simply suffered an “industrial mishap in the factory” which was compensable only under the WCA’s compensation system.  
Meerbrey
, 139 Ill. 2d at 466, quoting 2A A. Larson, Law of Workmen’s Compensation §68.21 (1988).  Had the plaintiff alleged either (a) that the co-employee was an alter ego of Marshall Field or (b) that Marshall Field commanded or expressly authorized its agent to commit an intentional tort upon the plaintiff, the WCA would not have barred the plaintiff from bringing a common law cause of action against Marshall Field.  However, the plaintiff did not make either allegation.  
Meerbrey
, 139 Ill. 2d at 466
.

In this case, plaintiffs in their fourth amended complaint sought to hold KFC liable
 based on the intentional torts of employee-defendants.  Plaintiffs did not allege that any of the employee-defendants were alter egos of KFC or that KFC commanded or expressly authorized employee-defendants to engage in the conduct alleged.  Rather, plaintiffs’ sought damages from KFC based upon 
respondeat superior
 and negligent retention theories.  Under either legal theory, the injuries plaintiffs alleged to have suffered were “accidental” from KFC’s point-of-view.  See 
Meerbrey
, 139 Ill. 2d at 466 (vicarious liability allegation against employer assumes accidental injury from employer’s point-of-view); 
Mier v. Staley
, 28 Ill. App. 3d 373, 381 (1975) (negligence claim against employer contemplated accidental injury).  Furthermore, plaintiffs do not attempt to invoke any of the three remaining exceptions which would allow plaintiffs to maintain a common law cause of action against KFC.  See 
Collier
, 81 Ill. 2d at 237.  We therefore hold that the exclusivity provisions of the WCA barred plaintiffs’ common law claims against KFC, and thus the circuit court did not err to the extent that it dismissed with prejudice plaintiffs’ claims against KFC based on the exclusivity provisions of the WCA.

Plaintiffs maintain that by alleging in their fifth amended complaint that employee-defendant Binninger was the alter ego of KFC, their claims against KFC were taken outside of WCA’s purview.  We disagree.  A litigant does not have an absolute right to amend his or her complaint, and a reviewing court will not disturb a decision dismissing a complaint with prejudice absent an abuse of discretion.  
Lake County Grading Company of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.
, 275 Ill. App. 3d 452, 460-61 (1995).

It was plaintiffs’ fourth amended complaint which Judge Block dismissed with prejudice.  Plaintiffs had ample opportunity to plead their case against KFC.  See 
Hirsch v. Feuer
, 299 Ill. App. 3d 1076, 1087
 (1998)
 (circuit court would have allowed plaintiffs to abuse the system had it granted plaintiffs leave to file sixth amended complaint).  Noteworthy is the fact that plaintiffs’ "alter ego" allegation came only after KFC raised the WCA as an affirmative defense.  Furthermore, all of plaintiffs’ five complaints (even the third, which the court denied leave to file) contained the previously-stricken customer-related allegations.  Despite Judge Block’s repeated orders to the contrary, plaintiffs insisted on including such allegations in each subsequent complaint.  We find that the circuit court did not abuse its discretion in dismissing with prejudice plaintiffs’ claims against KFC or in refusing to consider plaintiffs’ "alter ego" allegation.

Claims Against Employee-defendants

Like KFC, employee-defendants also attempt to find refuge in the exclusivity provisions of the WCA.  Again we find 
Meerbrey
 controlling.  There, our supreme court held in no uncertain terms that "an employee who commits an intentional tort may not raise the [WCA] as a bar to an action for damages by a fellow worker.
"”  
Meerbrey
, 139 Ill. 2d at 472.

In this case, plaintiffs in their fifth amended complaint brought actions against their former co-employees under theories of intrusion upon seclusion and intentional infliction of emotional distress.  Both are intentional torts.  See Restatement (Second) of Torts §652B, at 378 (1977) (“[o]ne who intentionally intrudes *** upon the solitude or seclusion of another *** is subject to liability to the other for invasion of his privacy); 
J. Roth Builders, Inc. v. Aetna Life and Casualty Co.
, 151 Ill. App. 3d 572, 575 (1987) (intentional infliction of emotional distress is an intentional tort).  Under 
Meerbrey
, we hold that the exclusive remedy provisions of the WCA did not bar plaintiffs’ claims against employee-defendants.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

VII

[The following material is nonpublishable under Supreme Court Rule 23.]

RES JUDICATA
 AND CLAIMS AGAINST EMPLOYEE-DEFENDANTS

Employee-defendants next assert that plaintiffs’ claims against them in the fifth amended complaint were barred under the doctrine of 
res judicata
.  According to employee-defendants, because the circuit court dismissed plaintiffs’ claims against KFC with prejudice, it should have likewise dismissed the claims against employee-defendants.  We find this argument without merit.

“Under the doctrine of 
res judicata
, a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action.”  
Torcasso v. Standard Outdoor Sales, Inc.
, 157 Ill. 2d 484, 490 (1993).  For 
res judicata
 to apply in a given case, the prior judgment must have been entered in a previous proceeding.  
Heller Financial, Inc. v. Johns-Byrne Co.
, 264 Ill. App. 3d 681, 694 (1994).  The essential elements of 
res judicata
 are: (a) a final judgment on the merits rendered by a court of competent jurisdiction; (b) identity of causes of action; and (c) identities of parties or their privies.  
Woolsey v. Wilton
, 298 Ill. App. 3d 582, 583-84 (1998).

Here, 
res judicata
 is inapplicable for two reasons.  First, Judge Block’s order dismissing KFC was made in the same proceeding in which plaintiffs filed their fifth amended complaint.  Second, Judge Block dismissed plaintiffs’ claims against KFC, not against employee-defendants; thus, employee-defendants cannot satisfy the third 
res judicata
 element.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

VIII

[The following material is nonpublishable under Supreme Court Rule 23.]

PROOF OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Employee-defendants also maintain that plaintiffs failed to prove their claims of intentional infliction of emotional distress.  However, we find that, pursuant to Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)), employee-defendants waived this argument.  They simply make a blanket statement in which they recite the elements of intentional infliction of emotional distress and claim that plaintiffs failed to prove their claim.  There is no argument, legal or factual, as to why the evidence introduced at trial was insufficient as proof of plaintiffs’ claim of intentional infliction of emotional distress.  See 
Britt v. Federal Land Bank Association of St. Louis
, 153 Ill. App. 3d 605, 608 (1987) (bare contentions without argument do not merit consideration on appeal).  Employee-defendants do not cite to the record or to any facts therefrom, nor do they cite any authority in support of their position.  Furthermore, Judge Brady found plaintiffs more credible than employee-defendants, but employee-defendants offer no argument as to why he erred in so finding.  Finally, it must be noted that, even if we were to reach the merits of employee-defendants’ argument, their argument would fail, since plaintiffs introduced sufficient evidence to prove the elements of intentional infliction of emotional distress.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

IX

[The following material is nonpublishable under Supreme Court Rule 23.]

SANCTIONS AGAINST EMPLOYEE-DEFENDANTS

The final issue on appeal is whether Judge Brady erred in denying KFC’s motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  According to KFC, the following conduct attributable to plaintiffs warranted an imposition of sanctions on plaintiffs or plaintiffs’ attorney: the fifth amended complaint named KFC as a defendant after Judge Block dismissed KFC with prejudice; plaintiffs’ attorney filed the fifth amended complaint without leave of court; plaintiffs’ attorney filed the fifth amended complaint approximately one month after Judge Block died and the case was reassigned to Judge Brady; and plaintiffs’ attorney refused to voluntarily dismiss KFC from the fifth amended complaint and threatened to contact Channel 5 News about the allegations against KFC.

Rule 137 allows a court to impose sanctions against a party or attorney who files a pleading which is not well-grounded in fact, is not warranted by existing law or is not a good-faith argument for the extension, modification or reversal of existing law.  
Pritzker v. Drake Tower Apartments, Inc.
, 283 Ill. App. 3d 587, 590 (1996).  The purpose of the rule is to prevent a litigant from abusing the judicial process, and a sanction may be imposed against a party who files a pleading for an improper purpose, such as to harass the opposing party.  
Rios v. Valenciano
, 273 Ill. App. 3d 35, 40 (1995).  The standard for evaluating a party’s conduct under Rule 137 is one of reasonableness under the circumstances as they existed at the time of the filing.  The determination of whether to impose Rule 137 sanctions rests with the sound discretion of the circuit court.  This decision is entitled to great weight on appeal and will not be disturbed on review absent an abuse of discretion.  
Pritzker
, 283 Ill. App. 3d at 590.

The question here is whether plaintiffs had a legal basis upon which to name KFC as a defendant in the fifth amended complaint.  They did.  “While prior rulings should be vacated or amended only after careful consideration, *** a court is not bound by an order of a previous judge [citation] and has the power to correct orders which it considers erroneous.”  
Towns v. Yellow Cab Co.
, 73 Ill. 2d 113, 121 (1978).  In this case, plaintiffs attempted to reinclude KFC as a defendant after the case was reassigned to Judge Brady, one month after Judge Block’s death.  Judge Brady was not obliged to follow Judge Block’s order dismissing KFC from the lawsuit, and thus plaintiffs had a legal basis to include KFC as a defendant in the fifth amended complaint.  Furthermore, plaintiffs’ attorney denied the KFC’s assertion that he threatened to contact Channel 5 News about the lawsuit.  KFC shouldered the burden of proving the sanctionable conduct of plaintiffs’ attorney (see 
Tri-G, Inc. v. Elgin Federal Savings and Loan Ass’n
, 182 Ill. App. 3d 357, 361 (1989)), and the circuit court was responsible for determining the legitimacy of KFC’s allegations in support of sanctions (see 
Berg v. Mid-America Industrial, Inc.
, 293 Ill. App. 3d 731, 736 (1997)).  However, the circuit court never made a finding of fact regarding KFC’s Channel 5 News allegation, and we, as a court of review, are not in the position of determining whether plaintiffs’ attorney actually made those threats.  We therefore cannot consider the Channel 5 News allegation and accordingly conclude that the circuit court did not err in denying KFC’s motion for Rule 137 sanctions.

KFC maintains that Judge Block’s January 1996 order dismissing it with prejudice was 
res judicata
 and as such plaintiffs knew or should have known that Judge Brady would dismiss KFC as a party defendant.  However, as we have already discussed, since Judge Block’s order was made in the same proceeding in which plaintiffs filed their fifth amended complaint, 
res judicata
 cannot apply.  See 
Heller Financial
, 264 Ill. App. 3d at 694.  Neither can KFC argue that plaintiffs filed their fifth amended complaint in violation of “law of the case” principles.  An order of the circuit court becomes the law of the case only where the order is final and appealable.  
Heller Financial
, 264 Ill. App. 3d at 695
.  Judge Block’s January 1996 order dismissing KFC with prejudice was not the law of the case, as it was not a final and appealable order.  

[The preceding material is nonpublishable under Supreme Court Rule 23.]

For the foregoing reasons, the decisions and orders of the circuit court of Lake County are affirmed.

Affirmed.

McLAREN and RAPP
, JJ., concur.